UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| SHELIA K. DICKINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:16cv185 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) as provided for in the Social Security Act. 42 U.S.C. §416(I). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act

> on March 31, 2011.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of January 1, 2007, through her date last insured of March 31, 2011 (20 CFR 404.1571 *et seq*.).
>
> 3. Through the date last insured, the claimant had the following severe impairment: asthma (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), and as follows: lift, carry, push, and pull ten pounds throughout the workday; sit six hours in an eight-hour workday, and stand and/or walk two hours in an eight-hour workday; occasional bending and stooping in addition to what is required to sit; no work requiring concentrated exposure to extremes in heat, cold, and humidity, and concentrated exposure to particulates such as dusts, fumes, and gases.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as a ticket seller and office manager. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 15, 2011, the alleged onset date, or even January 1, 2007, (the amended onset date) through March 31, 2011, the date last insured (20 CFR 404.1520(f)).

(Tr. 21-29).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on December 23, 2016. On February 2, 2017, the

3

defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step four was the determinative inquiry.

Plaintiff completed the 10th grade in school (Tr. 168). She was 51 years old as of her alleged disability onset date and 56 years old as of her date last insured (Tr. 43, 144). Plaintiff previously worked as (1) a ticket seller, which the vocational expert characterized as unskilled in nature and light in exertion per the Dictionary of Occupational Titles (DOT), but sedentary as she performed it; and (2) an office manager, which the vocational expert characterized as semi-skilled in nature, and light in exertion per the DOT, but sedentary as she performed it (Tr. 69).

Plaintiff argues that the ALJ should have considered her hand tremor a serious disabling condition. Garland D. Anderson, M.D., treated Plaintiff prior to her alleged disability onset date and during the relevant period. The record contains Dr. Anderson's treatment notes from 2006 (prior to Plaintiff's alleged onset date), but those records do not contain any complaints or clinical evidence of tremors (Tr. 476-79).

In January 2007, Plaintiff complained of having right arm and shoulder pain, but she did not complain of tremors (Tr. 474). Dr. Anderson noted no neurological or musculoskeletal deficits (Tr. 474). More than a year later, in February 2008, Plaintiff followed-up with Dr. Anderson, but, again, she did not complain of having tremors (Tr. 472). Dr. Anderson did not find any neurological deficits, nor did he report any tremors present (Tr. 472).

In April 2008, Dr. Anderson noted that Plaintiff "seems to have some kind of fine tremor, which is almost a familial type of tremor," but he did not include tremors on the list of diagnoses or recommend any apparent treatment (Tr. 468). Nor did Dr. Anderson opine that Plaintiff had any work-related limitations from the tremor (Tr. 468).

Plaintiff was a "no show" at an appointment scheduled with Dr. Anderson in January 2009 (Tr. 467). In May 2009, Plaintiff reported to Dr. Anderson that she "ha[d] been very nervous taking care of her aged mother" who had Alzheimer's (Tr. 465). Dr. Anderson observed no neurological deficits; rather, he found that Plaintiff was alert and responsive without neuropathy (Tr. 465). Plaintiff did not complain of having tremors, nor did Dr. Anderson report evidence of any such condition (Tr. 465).

A November 2009 treatment note indicates that Plaintiff "ha[d] been very busy taking care of her invalid mother and also her invalid aunt lives with her" (Tr. 463). It was noted that "[s]he

5

has some slight familial tremor," but Dr. Anderson noted no neurological deficits (Tr. 463).

In September 2014, medical expert Mark Faber, M.D., filled out medical interrogatories at the request of the ALJ (Tr. 497-99). After reviewing Plaintiff's records, Dr. Faber indicated that Plaintiff had "COPD/asthma" and "breast cancer – treated" (Tr. 497). He opined that Plaintiff could work at the "sedentary level due to poor pulmonary function" (Tr. 499). He indicated that Plaintiff could lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; sit up to 6-8 hours in an 8-hour day; and stand and or walk up to 2 hours in an 8-hour day (Tr. 499). He assessed no further restrictions for foot or hand controls, and he expressly found that Plaintiff had "no manipulative reductions" (Tr. 499). Dr. Faber opined that Plaintiff should have no exposure to concentrated respiratory irritants or extremes of hot or cold; and she should not climb ropes and ladders (Tr. 499). He indicated that Plaintiff should be limited to sedentary work "at least back to 1/1/[2]011" (Tr. 499).

In support of remand or reversal, Plaintiff argues that (1) the ALJ should have found Plaintiff's hand tremors constituted a medically determinable severe impairment at step two of the sequential evaluation process; and (2) the ALJ should have included in his RFC finding limitations from Plaintiff's "hand tremor impairment" (Pl.'s Br. at 3-4, 6-9).

The record clearly shows that Plaintiff did not meet her burden of establishing that familial tremors constituted a severe impairment at step two of the sequential evaluation. Under the Commissioner's regulations, an impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. § 404.1521. Also, an impairment is not severe when the medical evidence establishes only a slight abnormality or

combination of slight abnormalities that would have no more than a minimal effect on the ability to perform basic work activities. Social Security Ruling (SSR) 85-28, 1985 WL 56856 (SSA). As noted above, Plaintiff has a dual burden of production and persuasion at step two; she must produce evidence that proves that her impairment causes the functional limitations she alleges in the severity she alleges. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Finding an impairment not severe does not merit remand so long as the ALJ identifies other severe impairments and continues with the sequential evaluation. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (citing *Castile v. Astrue*, 617 F.3d 923, 927-28 (7th Cir. 2010). Here, the ALJ found that Plaintiff's asthma was a severe impairment at step two, but he also found that the "evidence was insufficient to establish any other severe physical or mental impairment" prior to Plaintiff's date last insured (Tr. 21).

In the present case, the ALJ specifically considered Plaintiff's complaints of hand tremors, but found that the evidence failed to substantiate a severe impairment (Tr. 23). The ALJ discussed a November 30, 2009 treatment note in which Dr. Anderson recorded that Plaintiff reported having "some slight tremor" (Tr. 23, 463). As the ALJ indicated, Dr. Anderson's examination findings did not list "tremor," and he did not record a diagnosis of familial tremor on that date (Tr. 23, 463). The ALJ also discussed Plaintiff's visit to Dr. Anderson's office on August 4, 2011, during which Plaintiff reported having a familial tremor "at this time" (Tr. 23, 275). Dr. Anderson observed the presence of a tremor during his examination (Tr. 23, 275). He did not, however, record a diagnosis of familial tremor (Tr. 23, 275). Anderson noted that although "no medications [were] involved," it was an issue they "could certainly address … at a later date if necessary" (Tr. 23, 275).

The ALJ found that "[t]he medical evidence is insufficient to support [Plaintiff's] allegations of significant tremor prior to the [date last insured]" (Tr. 23). Plaintiff argues that the ALJ "missed" the objective evidence of her alleged tremors, in particular an April 2008 treatment record in which Dr. Anderson noted that Plaintiff "seems to have some kind of fine tremor, which is almost a familial type of tremor" (Pl.'s Br. at 6; Tr. 468). An ALJ, however, is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

In the present case, it is clear that the ALJ sufficiently articulated his reasons through his analysis of relevant evidence (Tr. 23). The ALJ properly assessed the medical and non-medical evidence from prior to Plaintiff's date last insured (March 31, 2011) to determine that Plaintiff's tremors were not severe. During the relevant period, Dr. Anderson did not find any significant neurological deficits (e.g., weakness, abnormal reflexes, or decreased sensation). This evidence does not corroborate Plaintiff's claims about her tremors. Furthermore, Dr. Anderson did not opine on any functional limitations related to the tremors. Nor did he recommend any treatment or therapy to address tremors. *See Walker*, 2016 WL 7383806, at *3 (noting that the "Plaintiff's sporadic treatment history supports the ALJ's determination that Plaintiff's gout was not disabling). Moreover, Plaintiff's evidence from July 2012 through April 2014 (Pl.'s Br. at 3) does not demonstrate that the tremors constituted a severe impairment, within the meaning of the regulations, prior to Plaintiff's date last insured.

Plaintiff cites to information from the Mayo Clinic's website describing common symptoms related to "essential tremors" (Pl.'s Br. at 3). But she does not explain how the Mayo

8

Clinic information demonstrates how her alleged tremors caused more than a minimal effect on her ability to perform work-related activities during the relevant period, as was her burden. *See Walker v. Colvin*, No. 4:16-cv-0033, 2016 WL 7383806, at *3 (N.D. Ind. Dec, 20, 2016) ("At step two, the claimant has the burden to prove that his impairment is severe by showing that the impairment significantly limits his ability to do basic work activities") (citation omitted). Plaintiff also argues in her brief that "[s]urely, the ALJ is not suggesting that shaky hands have no impact on one's ability to handle tickets, handle and make change, use a keyboard, answer a phone, handle paperwork, among other similar functions related to" the ticket seller and office manager jobs (Pl.'s Br. at 7). Beyond speculation, however, Plaintiff cites to no evidence showing that her alleged tremors had such an impact on her.

Plaintiff argues that the ALJ "justif[ied]" finding the tremors a non-severe impairment at step two by noting that "the inability to carry a cup of coffee would not represent a limitation that would more than minimally affect most work-related activities (outside of work in the food services)" (Pl.'s Br. at 6, citing Tr. 28). She contends that there is no vocational expert testimony to support the ALJ's statement (Pl.'s Br. at 6). Plaintiff's arguments are flawed.

First, Plaintiff's argument is undermined by her own testimony. By way of example, Plaintiff testified that the tremors had been present for about ten years, during which time she worked (Tr. 23, 60). Her work ended in 2007 because the business closed, not due to an impairment. (Tr. 29). As the ALJ noted, Plaintiff testified "that the symptoms were embarrassing," but the only "work-related effect" that the tremors allegedly caused was that she "could not transport beverages" (Tr. 23, 60). At one point, she testified that if she wanted to drink coffee, someone else got it for her (Tr. 60). At another point during the hearing, Plaintiff admitted

9

that she was able to get herself something to drink (Tr. 71).

Second, Plaintiff explained that her ticket seller job involved taking money from ticket purchasers (Tr. 65). She was "pretty much the money watcher all day long" (Tr. 70). She did not report any work-related difficulties with taking money. Nor did she describe her ticket seller job as a food services job. She testified that the Bingo Hall where she worked held dinners and parties, but there is no indication that her job responsibilities included serving drinks or food (Tr. 66). Additionally, there is no evidence that Plaintiff's office manager job involved food service-related activities (Tr. 70-71).

This court finds that the ALJ provided an adequate discussion to permit meaningful review of his conclusion that tremors had no more than a minimal effect on Plaintiff's work-related activities. Because substantial evidence supports the ALJ's decision, it will be affirmed.

Next, the court will consider Plaintiff's argument that the Alj should have included hand tremors in his RFC limitations. However, it is clear that the ALJ properly determined Plaintiff's RFC in light of all the evidence of record. An RFC is the most an individual can do despite her limitations. 20 C.F.R. § 404.1545. The RFC assessment is an administrative finding, not a medical opinion. SSR 96-5p, 1996 WL 374183, at *5 (SSA). The determination of an individual's RFC need not be based on a specific medical opinion because it is a determination reserved to the ALJ as fact-finder for the Commissioner. 20 C.F.R. § 404.1527(d)(2). When assessing a claimant's RFC, an ALJ considers both the severe and non-severe impairments (Tr. 20). See 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2).

In this case, the ALJ found that Plaintiff had the RFC to perform:

> [S]edentary work as defined in 20 CFR 404.1567(a), and as

> follows: lift, carry, push, and pull ten pounds throughout the
> workday; sit six hours in an eight-hour workday, and stand and/or
> walk two hours in an eight-hour workday; occasional bending and
> stooping in addition to what is required to sit; no work requiring
> concentrated exposure to extremes in heat, cold, and humidity, and
> concentrated exposure to particulates such as dusts, fumes, and
> gases.

(Tr. 27). The ALJ indicated that he considered the entire record, including Plaintiff's allegations concerning tremors, which the ALJ found to be non-severe (Tr. 23, 27-28). The ALJ noted that he fully discussed the tremor allegations at step two of the sequential evaluation, and it was unnecessary to repeat the discussion in detail (Tr. 23, 28). As discussed above, the ALJ evaluated the records in which Plaintiff alleged having tremors, but there was no evidence that the symptoms significantly affected her ability to do work-related activities. The ALJ found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible (Tr. 28). *See Williamson v. Colvin*, No. 4:13-CV-1-JVB, 2014 WL 1317133, at *6 (N.D. Ind. Mar 28, 2014) ("An ALJ's credibility finding is entitled to 'considerable deference' and will only be overturned if patently wrong.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). As the ALJ indicated, "most of the claimant's allegations regarding limitations during the period between the amended onset date and the [date last insured] are either not supported or contradicted by the objective medical evidence" (Tr. 28). The ALJ concluded that "[t]he evidence does not suggest that additional limits were necessary" (Tr. 29).

Plaintiff contends that the ALJ should have included in the RFC a limitation involving occasional – or less than occasional – handling and fingering because of the tremors, and had the ALJ done so, he "may very well have found" that she was disabled (Pl.'s Br. at 9). Plaintiff cites to no particular evidence in which a medical source opined that Plaintiff's tremors caused such

manipulative limitations (Tr. 29). Rather, as noted above, records prior to Plaintiff's date last insured indicate that she had only "some slight familial tremor" or "some kind of fine tremor" (Tr. 463, 468), for which she received no apparent treatment. 20 C.F.R. § 404.1529(c)(3)(iv)-(vi) (medication, treatment, and other measures that provide relief are factors that should be considered when evaluating symptoms). This is inconsistent with the degree of difficulty that Plaintiff now alleges.

Moreover, Dr. Anderson did not opine that Plaintiff had any manipulative limitations from the tremors (see, e.g., Tr. 463, 465, 468, 472, 474). Further, the ALJ noted that the State agency medical consultants who reviewed Plaintiff's records found that there was insufficient evidence to establish severe physical impairments prior to Plaintiff's date last insured (Tr. 28, 79-80, 84-85). They did not opine that Plaintiff had any manipulative limitations. Likewise, Dr. Faber's September 2014 report provides no basis to include any handling or fingering limitations in Plaintiff's RFC (Tr. 499). In fact, Dr. Faber expressly found that Plaintiff had "no manipulative reductions" (Tr. 499). This substantial evidence provides support for the ALJ's RFC finding.

The ALJ further noted that during much of the relevant period, Plaintiff cared for her ailing mother (and possibly her ailing aunt), which likely required exertion beyond that defined in the RFC finding (Tr. 29). The record reveals that Plaintiff reported that she prepared meals and helped her mother with her personal care (Tr. 51-52, 54). Further, as the ALJ noted, Plaintiff testified that she experienced tremors for approximately ten years, including the period that she worked (Tr. 23). Finally, the ALJ noted that Plaintiff's work ended in 2007 due to the business closing, not due to an impairment (Tr. 29). These factors undermine Plaintiff's claim that the tremors caused limitations that precluded her from doing her past relevant work.

12

This court finds that the ALJ's RFC finding is supported by substantial evidence and, as the ALJ indicated, "[t]he evidence does not suggest that additional limits were necessary" (Tr. 29). The ALJ posed proper hypotheticals to the vocational expert based on the evidence of record (Tr. 71-72). *See Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) (the hypothetical question need only contain a description of the limitations supported by the medical evidence of record). The vocational expert testified that Plaintiff could perform her past relevant work (Tr. 71-72). The ALJ was entitled to rely on the vocational expert's testimony as constituting substantial evidence supporting the ALJ's finding Plaintiff not disabled at step four of the sequential evaluation process (Tr. 29-30). *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010) (holding that it must be clear that a vocational expert took into account all of the impairments that the ALJ recognized to "assure reviewing courts that the [vocational expert's] testimony constitutes substantial evidence of the jobs a claimant can do."). The ALJ was not required to go beyond step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 404.1560.

Because the ALJ found Plaintiff could do her past relevant work at step four, the burden of proof was on Plaintiff to demonstrate that her impairments and resulting limitations would prevent her from doing that work. Plaintiff argues that her case should be remanded because the SCO requires constant handling and fingering for a ticket taker job and frequent handling for an office manager job (Pl.'s Br. at 6-7). But the DOT, upon which the vocational expert relied, similarly identifies the ticket taker job as involving constant handling and fingering and the office manager job as involving frequent handling and fingering. *See* DOT 211.467-030, 1991 WL 671853 (GPO); DOT 219.362-010, 1991 WL 671953 (GPO). Regardless of that fact, Plaintiff's argument misses a critical point: as the ALJ found, the record does not support a finding that

Plaintiff had manipulative limitations that would have precluded her from doing either of those jobs as she performed them or as they are performed according to the DOT (Tr. 27-30).

Accordingly, for all the above reasons, the ALJ's decision will be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: June 9, 2017.

s/ William C. Lee
William C. Lee, Judge
United States District Court